## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT F. CALLOWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **CIVIL ACTION NO 04-0708-P-D** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, Social Security disability insurance benefits and supplemental security income.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  Oral argument was waived and the case was taken under submission on the pleadings. (Doc. 14).  Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be **affirmed.**

## I.    Issues on Appeal

1. Whether the Administrative Law Judge (ALJ) erred by failing to find that plaintiff's depression is a severe impairment.

2. Whether the ALJ erred by failing to develop a full and fair record.

3. Whether the ALJ erred by failing to properly consider plaintiff's testimony of nausea, abdominal pain, and fatigue.

## II.    Background Facts

Plaintiff was born on November 27, 1960 and was forty-three years old at the time of the administrative hearing on July 12, 2004. (Tr. 39).  The ALJ found that plaintiff has an eighth grade education. (Tr. 15).  Plaintiff has past relevant work as an over-the-road truck driver. (Tr. 44, 97). Plaintiff alleges that he became unable to work on June 20, 2003 because of heart disease, cirrhosis, and hepatitis C. (Tr. 75, 96, 245).

### III.    Procedural History

Plaintiff applied for a period of disability, disability insurance benefits and supplemental security income on August 14, 2003. (Tr. 75-78, 244-258).  The applications were denied initially. (Tr. 55-59, 261-265).[1]  On July 12, 2004, an administrative hearing was held before the ALJ and plaintiff and his attorney were present. (Tr. 30-52).  On August 13, 2004, the ALJ entered a decision wherein he found the plaintiff not disabled. (Tr. 11-23).  On October 21, 2004, the Appeals Council denied the request for review and the hearing decision became the final decision of the Commissioner of Social Security. (Tr. 6-8).

### IV.    Findings of the Administrative Law Judge

The ALJ found plaintiff has the severe impairment of Hepatitis C but this impairment did not meet or medically equal a listing in the Listing of Impairments. 20 C.F.R.  Pt. 404, Subpt. P, App. 1. (Tr. 16, 22).  He found plaintiff's alleged impairments of heart disease and cirrhosis were not severe. (Tr. 16, 20).  He also found plaintiff's subjective complaints were not fully credible. (Tr. 16, 22).  The ALJ found plaintiff has the residual functional capacity for sedentary work, and thus could not return to

---

[1] The reconsideration stage was eliminated from this case pursuant to a test of modifications to the disability determination procedure. 20 C.F.R. §§ 404.906, 404.966, 416.1406 and 416.1466.

his past relevant work as a truck driver because it was medium exertional work. (Tr. 16, 21, 22). Based upon plaintiff's age, education, vocational experience, absence of transferable skills, and residual functional capacity; the ALJ found that Rule 201.25 of the Medical-Vocational Guidelines directed a conclusion that plaintiff was not disabled. (Tr. 21-23).

**V**.     <u>**Plaintiff's Testimony**</u>

Plaintiff is 6'2" tall and weighs 270 pounds.  He has lost about forty pounds because he can not keep food down. (Tr. 41-42).  His normal weight is around 305 pounds.[2] (Tr. 42).  He is capable of managing his medication, although sometimes he can not afford it. (Tr. 42-43).  His current medications were on the medication list including his liver medicine. (Tr. 42). He lives with his retired mother who buys his medication. (Tr. 43, 46).  The medication helps some but does not relieve all his symptoms. (Tr. 43).  Plaintiff can not work because of the nausea, pain and tiredness.  He is sick in his stomach "80 percent of every 24 hours", and he becomes sick if he goes out in the heat. (Tr. 47, 49).  Anti-nausea medication helps some of the time. (Tr. 49).  Spells of vomiting and dry heaves prevent him from keeping down his food and cause weight loss. (Tr. 50).  He has constant pain in the liver area of his abdomen. (Tr. 50).

Plaintiff does not know how he contracted Hepatitis C.  He has not drank in ten years.  He believes that all the doctors can do for him is prescribe medication. (Tr. 49).  Because of the abdominal pain, he wants to enter a pain management program which his doctor recommended, but he can not afford it. (Tr. 43, 49).  His doctors have not told him much information about his illness. (Tr.

---

[2]  On July 10, 2003, plaintiff's surgeon recorded his weight as 312 pounds. (Tr. 207).

49).

Plaintiff has worked as an over the road truck driver since 1990 and has not performed any other work in the past fifteen years. (Tr. 44). He is now depressed because he has been without income for a year. (Tr. 47). He does not drive because he becomes disoriented if his ammonia levels get high. (Tr. 48). Plaintiff independently bathes and dresses but can do very little to help his mother. (Tr. 46). The most he can do is take out the garbage and he spends each day in bed or sitting in the living room. (Tr. 47).

**VI.     Analysis**

    **A.     Standard of Review.**

In reviewing claims brought under the Act, this court's role is a limited one. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991) (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1427 (1971); Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1158-1159 (11th Cir. 2004); Bloodsworth, 703 F. 2d at 1239. The Commissioner's decision must be affirmed if it is supported by substantial evidence even when a court finds that the preponderance of the evidence is against the decision of the Commissioner. Richardson, 402 U.S. at 401, 91 S.Ct. at 1427 (1971); Crawford, 363 F. 3d at 1158-

1159; <u>Bloodsworth</u>, 703 F.2d at 1239.   "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  Further, it has been held that the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  This court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

### B.       Statement of the Law

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability.  <u>See</u> 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability.  <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity.  At the second step, the claimant must prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the

third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity and age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); see also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## C.  **Medical Evidence**

On June 14, 2003, plaintiff was treated at Springhill Memorial Hospital with complaints of "a five day history of abdominal pain, right upper quadrant" with some nausea and vomiting, and pain radiating into the right groin. (Tr. 198, 198-204). Plaintiff reported a history of kidney stones. Pain and anti-nausea medications were administered in the emergency room and plaintiff was admitted overnight. (Tr. 202). Diagnostic test results were normal but for a "contracted gall bladder possibly due to a recent meal ingestion" but without evidence of gallstones, identified on ultrasound. (Tr. 199, 202-204). A "minimal elevation" was noted on metabolic profile of liver function. (Tr. 199). Plaintiff denied chest

pain and his heart was noted as having a "regular rate and rhythm, without murmurs, ectopy, gallops, or rubs". (Tr. 201).  Plaintiff reported that he was not taking any medications. (Tr. 199).

On June 24, 2003, plaintiff was hospitalized at the Mobile Infirmary Medical Center for post-prandial upper right abdominal pain, nausea and vomiting of two weeks duration. (Tr. 145-168).  During the abdominal laparoscopy, plaintiff's gall bladder was noted as "chronically thickened" and was then removed laparoscopically without complications. (Tr. 146, 149).  Plaintiff's post-surgical course was also without complications. (Tr. 146).  The doctor noted plaintiff's liver appeared normal but obtained a biopsy because of  "mildly elevated liver function test" results. (Tr. 152).  The biopsy indicated "minimal chronic lobular hepatitis consistent with viral (i.e., Hepatitis C) etiology.  Portal/periportal inflammation grade 1, fibrosis stage 1". (Tr. 153- 154).  Plaintiff's gastric biopsy, indicated "mild chronic gastritis, focally minimally active" but was negative for the helicobacter pylori.  (Tr. 155).  Plaintiff was also diagnosed with a "moderately large hiatal hernia" and antritis. (Tr. 156).  He was discharged and advised to follow with his treating physician. (Tr. 146).

At this hospitalization, plaintiff reported a past history of "knee surgery, appendectomy, coronary artery disease" and kidney stones. (Tr. 147).  The doctor noted "no chest pain" and that plaintiff "recently had a cardiac work-up and was shown to have mild to moderate coronary artery disease". (Tr. 151).  The doctor found plaintiff's heart had a regular rate and rhythm and his chest was clear. (Tr. 147, 152).  Plaintiff also reported that he smoked cigarettes and was not taking any medications, including aspirin or ibuprofen. (Tr. 151).  A chest x-ray showed plaintiff's heart and mediastinum were  "unremarkable". (Tr. 163).  The intake form indicates plaintiff denied trouble breathing or chest pain. (Tr. 166).

On July 1, 2003, plaintiff called his surgeon for a refill on Lortab 7.5 and Phenergan (anti-nausea medication). The prescriptions were called to a pharmacy. (Tr. 208).

On July 7, 2003, plaintiff was again treated at the Springhill Memorial Hospital emergency room for complaints of "moderate right-sided abdominal pain" which radiates into the groin. (Tr. 194). Plaintiff's examination was normal but for "moderate right sided tenderness." (Tr. 194). His heart had a "[r]egular rate and rhythm, without murmurs, ectopy, gallops or rubs" and plaintiff reported "no chest pain." (Tr. 194). His lungs were noted as clear with "breath sounds equal, no wheezes, rales, or rhonchi." (Tr. 194). He was placed on a clear liquid diet for twenty-four hours, prescribed two medications, and advised to see his surgeon the next day. (Tr. 195).

On July 8, 2003, plaintiff called his surgeon and requested a refill of Lortab 7.5. The doctor's records indicate that plaintiff was told that he "needs to come in, if patient is having that much pain" and no refill was given. (Tr. 208). On July 10, 2003, plaintiff was examined by his surgeon for his complaint's of pain in the  right upper quadrant of his abdomen. The surgeon determined that the pain was not related to the surgery and referred plaintiff to a gastroenterologist. (Tr. 207).

On July 12, 2003, plaintiff returned to the Mobile Infirmary and was treated for abdominal pain, nausea, vomiting and diarrhea of twenty-four hours duration. (Tr.169-189). An EGD showed bile reflux, antritis and peripyloric inflammation, and medications were administered. He was released on July 17, 2003, in stable condition and advised to follow with his surgeon. (Tr. 171). In regard to past medical history, the doctor noted "[h]eart evaluation showing some mild coronary disease." (Tr. 173). Plaintiff denied chest pain, shortness of breath and weight loss. (Tr. 173). He also reported that he smoked cigarettes. (Tr. 173). The doctor noted plaintiff's heart sounds were normal with no murmur,

8

gallops or rubs and chest x-rays were normal and also noted a "very slight" elevation in liver function. (Tr. 171,174,181-183).

On July 22, 2003, plaintiff returned to Springhill Memorial Hospital with complaints of right side pain, nausea, vomiting and diarrhea of one days duration. He was diagnosed with renal colic, hematuria (blood in his urine) and abdominal tenderness. (Tr. 190-204). Diagnostic tests of the abdomen and kidneys were normal. (Tr. 192, 193). He was discharged on July 23, 2003.

On July 31, 2003, plaintiff returned to his surgeon. His notes are not legible, though it appears he wrote "had kidney stones" and "also had bile reflux". (Tr. 207).

On August 16, 2003, plaintiff was treated at Mobile Infirmary and released the next day. He complained of blood in his urine and right flank pain. A kidney stone was suspected but not confirmed. (Tr. 210). Diagnostic x-ray tests showed normal kidneys and bladder and normal lower abdomen. (Tr. 212-213). He was given pain and nausea medication and Pepcid for gastritis. (Tr. 210).

On January 23, 2004, plaintiff returned to the Springhill Memorial Hospital emergency department and reported that he "hurt [his] left shoulder getting out of the truck." (Tr. 236). He reported pain of two hours duration after slipping and falling and injuring his left shoulder. His clinical examination and left shoulder x-ray were normal. Plaintiff denied chest pain or shortness of breath and his heart was noted as having a "regular rate and rhythm, without murmurs, ectopy, gallops, or rubs". (Tr. 236). A shoulder sprain was diagnosed and pain, anti-inflammatory and muscle relaxant medications were prescribed. (Tr. 237).

On March 17, 2004, plaintiff returned to the Springhill Memorial Hospital emergency department and reported right-sided abdominal pain radiating to the right flank, moderate nausea,

vomiting, fever, and moderate loss of appetite.  Plaintiff denied chest pain or shortness of breath and his

heart was noted as having a "regular rate and rhythm, without murmurs, ectopy, gallops, or rubs". (Tr.

241).  Plaintiff reported that he had recently been treated at USA Medical Center and was discharged

with Demerol but was now out of medication.  Medication for nausea was administered intravenously

but without response.  The doctor noted plaintiff's history of kidney stones.  The doctor also noted

"with significant unintentional weight loss over past several months" but it is not clear whether this was

the doctor's observation or plaintiff's report. (Tr. 241).  No weight is recorded.  The doctor noted as

follows:

> Nursing staff reports patient belligerent and demanding Demerol, which he received at
> USA.  I explained to patient that we typically do not give narcotics to patients with
> abdominal pain and possible surgical process until we can adequately evaluate them
> without masking symptoms.  Bentyl was ordered.  Nursing staff reports patient refused
> and left [against medical advice].

(Tr. 242).

On March 31, 2004, plaintiff was consultatively evaluated by Blaine C. Crum, Ph.D, on referral

from his attorney. (Tr. 223-228).  Dr. Crum noted plaintiff's report of his marital, social, familial,

educational, and medical history.  He conducted a behavioral interview and administered the Mooney

Problem Checklist, Beck Depression Inventory-II, and the Minnesota Multiphasic Personality

Inventory - Second Edition.  Dr. Crum's primary diagnosis somatoform disorder and his secondary

diagnosis was depressive disorder.  He completed a residual functional capacity assessment wherein he

found plaintiff had marked impairment in the areas of activities of daily living; maintaining social

functioning' concentration, persistence or pace; and deterioration or decompensation in work or work-

like settings. (Tr. 227).  He also found plaintiff was markedly impaired in his ability to understand, carry

out and remember instructions and perform repetitive tasks. (Tr. 227-228).  He found plaintiff was moderately impaired in his ability to respond appropriately to supervision and coworkers and perform simple tasks. (Tr. 227).  Dr. Crum indicated that this level of functioning would last greater than twelve months and had been present since 2003.  Dr. Crum also stated that plaintiff's "ability to concentrate, focus, and maintain work effort is impaired due to depression and significant health problems." (Tr. 228).

On May 8, 2004, plaintiff returned to the Springhill Memorial Hospital emergency department with complaints of left flank pain of several hours duration with blood in his urine, mild difficulty urinating, moderate nausea and some vomiting.  Plaintiff's physical examination was normal as were the CT scans of his abdomen and pelvis.  He tested positive for marijuana, opiates, and benzodiazepines. (Tr. 239).  The doctor noted as follows:

> Reviewed findings with patient.  No clinically apparent etiology for pain.  Stable for outpatient management.  I have explained my policy of not prescribing controlled substances to patient with illicit or unexplained controlled drugs.

(Tr. 239).  Plaintiff was discharged and advised to follow with his treating physician.

On June 24, 2004, Dr. Jeffrey K. Hannon, M.D., one of plaintiff's surgeons, confirmed by letter that plaintiff has Hepatitis C. (Tr. 235).

### D.    Plaintiff's Argument

**1. Whether the Administrative Law Judge (ALJ) erred by failing to find that plaintiff's depression is a severe impairment.**

Plaintiff argues that the ALJ erred by finding his "depression has not been documented to persist at greater than a mild level" and was not a severe impairment. (Tr. 21).  Plaintiff argues that Dr.

Crum's opinion following his clinical examination and psychometric testing establishes that plaintiff's depression is a severe impairment and that the ALJ's reasons for rejecting Dr. Crum's opinion[3] are not supported by the evidence.

Plaintiff asserts that the ALJ rejected Dr. Crum's opinion because he was not a treating physician but the Commissioner frequently uses consultative evaluations by non-treating physicians when evaluating claimants. (Tr. 21). Plaintiff also asserts that the ALJ found plaintiff's testimony that he did not recall seeing Dr. Crum was "extremely significant". (Tr. 21). Plaintiff clarifies that he did not testify that he did not recall seeing Dr. Crum but instead testified that he did not remember the names of his doctors. (Tr. 44). Plaintiff also points out that the ALJ erred by relying upon the absence of an allegation of depression as a disabling impairment because plaintiff testified that depression affected his ability to work, and thus alleged depression was a disabling impairment. (Tr. 16, 47).

Additionally, plaintiff argues that the ALJ erroneously substituted his opinion for that of Dr. Crum when he found plaintiff's mental impairments created only mild deficiencies in the broad areas of function without episodes of decompensation. Plaintiff points out that the ALJ does not cite to any medical evidence to support this finding and that it is contradicted by Dr. Crum who rendered the only psychological opinion.

In regard to depression, the ALJ found as follows:

Further, the undersigned finds that the claimant experiences only mild mental limitations, as he has mild restrictions on his activities of daily living and mild estimated difficulties in

---

[3] Dr. Crum found plaintiff was markedly limited in his ability to function in all four broad areas of functions and that plaintiff was markedly or moderately basic mental work-related functions. (Tr. 227-228).

maintaining social functioning.  He has been shown to have mild deficiencies of concentration, persistence, or pace and no episodes of decompensation.  As has been suggested above, the overall record reveals that the claimant has not taken prescription medications specifically for mental health complaints and has not undergone treatment at a mental health facility.  The [ALJ] notes that the claimant underwent a psychological evaluation by Blaine C. Crum at the request of his attorney.  The [ALJ] notes that Dr. Crum indicated the claimant had a tendency to overstate his problem.  The [ALJ] recognizes that Dr. Crum indicated the claimant has marked limitations in several areas. The [ALJ] finds it extremely significant that the claimant testified that he has no recall of seeing Dr. Crum and he is not his treating physician.  The [ALJ] further notes that the claimant has never alleged depression as a disabling impairment; he has never received treatment at a mental health facility and has never taken medication for depression. Therefore, the claimant's depression has not been documented to persist at greater than a mild level, and he is clearly capable of performing sedentary work.

(Tr. 20-21).   The ALJ also found that "[i]t is reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, he would have presented to his physicians for ongoing treatment." (Tr. 20).

The regulations state that "an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); 404.1521(a).  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs.  Examples of these include-- (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 416.921(b); 404.1521(b).

The Eleventh Circuit has held that a plaintiff's impairment may be considered "not severe" only if it is a slight abnormality which has such a minimal effect on plaintiff that it is not expected to interfere

with the ability to work, regardless of age, education or work experience.  Brady v. Heckler, 724 F.2d

914, 922 (11th Cir. 1984).  In McDaniel v. Bowen, 800 F. 2d 1026 (11th Cir. 1986), the Eleventh

Circuit clarified the severity determination and stated that

> [a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be
> either severe or not severe.  Step two is a threshold inquiry.  It allows only claims based
> on the most trivial impairments to be rejected.  The claimant's burden at step two is
> mild.  An impairment is not severe only if the abnormality is so slight and its effect so
> minimal that it would clearly not be expected to interfere with the individual's ability to
> work, irrespective of age, education or work experience.  Claimant need show only
> that her impairment is not so slight and its effect is not so minimal.

Id. at 1031.  Additionally, plaintiff must establish that the impairments cause a severe functional

limitation which continues for twelve consecutive months.  See Barnhart v. Walton, 535 U. S. 212,122

S. Ct. 1265, 1272 (2002) ("For purposes of making that claim, Walton assumes what we have just

decided, namely, that the statute's '12 month' duration requirements apply to both the 'impairment' and

the 'inability' to work requirements.").  Moreover, in Bridges v. Bowen, 815 F.2d 622 (11th Cir.

1987), the Eleventh Circuit held that if an impairment causes only mild effects on plaintiff's ability to

work, or is amenable to medical treatment, it may be not severe.  Id. at 625-626.

　　The undersigned is aware of the standard for a non-severe impairment as set forth in Brady.

However, the undersigned also recognizes the standard for review, i.e., is there substantial evidence in

the record to support the ALJ's finding.  Substantial evidence which is defined as "more than a scintilla

but less than a preponderance," consists of "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

1420, 1427 (1971);  Bloodsworth v. Heckler, 703 F. 2d 1233, 1239 (11th Cir. 1983).  The

"reasonable person" standard dictates that if there is pertinent and adequate evidence supporting a

14

decision, it must be upheld. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Additionally, this Court may not substitute its own judgment for the Commissioner's nor re-evaluate the evidence unless the decision is clearly illogical and unsubstantiated. (emphasis added)  See Bloodsworth, 703 F.2d at 1239; See also Powell v. Heckler, 773 F.2d 1572, 1575 (11th Cir.1985).  Therefore, even when evidence appears to weigh against the Commissioner's decision, this Court must affirm the decision if there is sufficient supporting evidence. Martin, 894 F.2d at 1529; see Bloodsworth, 703 F.2d at 1239 (11th Cir. 1983).

The undersigned finds that substantial evidence supports the ALJ's decision that plaintiff's depression is not a severe mental impairment.  The ALJ is ultimately responsible for deciding a plaintiff's residual functional capacity including his mental residual functional capacity. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945.  The rulings define residual functional capacity as

> what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities.

Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, *2.  Because this determination is an "administrative assessment", it is the ALJ's function to determine the plaintiff's residual functional capacity through examination of the evidence and resolution of conflicts in the evidence. Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996); 20 C.F.R. § 404.1546, 20 C.F.R. § 416.946. The ALJ must base the assessment upon all of the relevant evidence of the plaintiff's remaining ability to work in spite off his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1546; 20 C.F.R. § 404.1527; 20

15

C.F.R. § 416.946; 20 C.F.R. § 416.927.  Also, as the finder of fact, the ALJ has wide latitude to evaluate the weight of the evidence. <u>Owens v. Heckler</u>, 748 F.2d 1511, 1514 (11th Cir.1984).

The ALJ noted Dr. Crum's findings of marked mental impairments.  However, the ALJ also noted that "Dr. Crum indicated the claimant had a tendency to overstate his problem." (Tr. 21).  This finding by Dr. Crum when considered with the absence of treatment at a mental health  facility, absence of medication to treat depression and the failure to allege depression as a disabling impairment in the administrative process but for the statement made at the hearing constitute substantial evidence to support the ALJ's decision.[4]   Accordingly, the undersigned finds that the ALJ did not improperly substitute his opinion for that of Dr. Crum and that the ALJ stated specific reasons, supported by the record for rejecting Dr. Crum's opinion.  Moreover, the ALJ stated specific reasons, also supported by the record, for finding plaintiff's depression was not a severe impairment.

### 2. Whether the ALJ erred by failing to develop a full and fair record.

Plaintiff argues that the ALJ should have ordered additional psychometric and intelligence testing because of ambiguities and insufficiencies in the record regarding plaintiff's educational level. Plaintiff also asserts that the ALJ should have questioned him about his ability to read, write and perform arithmetic.  Plaintiff relies upon his statements to Dr. Crum to the effect that he quit school in the ninth grade to work, that he was in Special Education, and that he had a limited ability to read. However, Dr. Crum did not perform any IQ or other psychometric tests.  Plaintiff argues that this

---

[4] Plaintiff testified that he is depressed because he has been without income for a year. (Tr. 47). He did not testify that his depression prevented him from working.

16

information should have prompted the ALJ to order the additional tests and that the case should be remanded for that purpose.

Plaintiff also argues that because he listed coronary artery disease as a disabling impairment the ALJ should have sent him to a cardiologist for a consultative examination to determine the functionally limiting effects of his disease. Plaintiff relies upon the notation in the June 24, 2003 records from Mobile Infirmary of a past history of cardiac work-up which indicated "mild to moderate coronary artery disease". (Tr. 151). Plaintiff argues that the ALJ failed to mention this diagnosis of coronary artery disease and committed reversible error when he found that "there was no evidence to indicate" that plaintiff has this impairment. (Tr. 16).

The ALJ has a basic obligation to develop a full and fair record which may include ordering a consultative examination. Reeves v. Heckler, 734 F.2d 519, 521-522 (11th Cir.1984). "Consultative examinations are not required by statute, but the regulations provide for them where warranted." 20 C.F.R. § 404.1517 (2000) ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). Even though the ALJ has discretion, it may be "reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Reeves, 734 F.2d at 522 n.1 (citation omitted). Also, the ALJ should order a consultative examination if plaintiff's testimony and the treating physicians records indicate the existence of an impairment. McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir.1988).

The undersigned recognizes the ALJ's obligation, but the ALJ is not charged with making

17

plaintiff's case for him.  Plaintiff has the burden of proving he is disabled.  See Hale v. Bowen, 831

F.2d 1007, 1011 (11th Cir. 1987)); Bloodsworth, 703 F.2d at 1240.  The regulations provide in part:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must
> bring to our attention everything that shows that you are blind or disabled. This means
> you must furnish medical and other evidence that we can use to reach conclusions about
> your impairment(s) and, if material to the determination of whether you are blind or
> disabled, its effect on your ability to work on a sustained basis.

20 C.F.R. §§ 416.912(a), 404.1512(a).  "In making a claim for Social Security disability benefits, a

claimant bears the initial burden of establishing the existence of a disability." Lucas v. Sullivan, 918 F.2d

1567, 1571 (11th Cir. 1990) (citing [Social Security Act § 1614(a)(3)] 42 U.S.C. § 1382c(a)(3)

(1982); see 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529, 416.929.

In regard to plaintiff's allegation that the ALJ did not fully develop the record of his alleged

intellectual and academic deficiencies, the undersigned notes that plaintiff never alleged diminished

intellect or academic deficiencies as a basis for disability.  Consequently, the ALJ made no finding in

regard to plaintiff's intellectual ability or ability to read, write and perform arithmetic but for his finding

that plaintiff completed the eighth grade and had a limited education. (Tr. 21, 23).  The record indicates

that plaintiff reported in his disability report that he completed the 11th grade in 1977 and attended

regular classes. (Tr. 102).  At the hearing, he testified that he completed the eighth grade although he

attempted the ninth, tenth and eleventh grades. (Tr. 40-41).  In his interview with Dr. Crum, he

reported placement in the "Learning Disabled/Special Education Program" and quitting school in the

ninth grade to work. (Tr. 223).  Dr. Crum also noted that plaintiff was "somewhat apologetic about his

educational level and his limited ability to read." (Tr. 223).  However, in his disability report, plaintiff

reported that he worked as an over the road truck driver which required that he write and complete

reports. (Tr. 97).  Also, in response to the question "How do your illnesses, injuries or conditions limit your ability to work?", plaintiff described the physical symptoms resulting from his alleged medical impairments and medication side effects but did not indicate that he could not work because he was intellectually impaired. (Tr. 96, 103).  Accordingly, the undersigned finds that the ALJ did not commit reversible error for failing to develop the record further in regard to plaintiff's intellectual capacity and academic ability.  Reeves v. Bowen, 841 F. 2d 383, 385 (11th Cir. 1988) (per curiam) (finding that "the Government cannot be faulted for failing to foresee the transformation of the basis for the claim from physical to mental disability.").

Plaintiff also argues that the ALJ should have sent him for a cardiac evaluation to determine the functional limitations resulting from his coronary artery disease instead of finding it to be a non-severe impairment.  On that issue, the ALJ noted plaintiff "alleged impairments of heart disease and cirrhosis" but "[a]fter carefully considering the entire record, the [ALJ found] that there is no evidence to indicate [plaintiff] has these impairments; therefore, he [found] these impairments were not severe. (Tr. 16). Despite his statement that there was no evidence of heart disease, after summarizing the medical evidence, the ALJ also found as follows:

> The claimant in documentation of record, has alleged heart disease, cirrhosis and Hepatitis C as a basis of disability.  The undersigned concludes that, while the record contains evidence of the existence of a diagnosis of Hepatitis C, the objectively demonstrable evidence of record fails to support that the claimant is as impaired as he has alleged.  As stated above, the [ALJ] finds that the claimant's alleged heart disease and cirrhosis are not severe impairments.

(Tr. 20).

As evidence of his impairment, plaintiff relies upon an entry in the Mobile Infirmary records of

June 24, 2003,  wherein a physician made note that plaintiff "recently had a cardiac work-up and was shown to have mild to moderate coronary artery disease". (Tr. 151).   Again, the undersigned acknowledges the ALJ's obligation to develop the record.  However, as previously stated, plaintiff has the burden of proving his disabling condition and the ALJ is not obligated to make plaintiff's case for him.  Plaintiff had the opportunity and the obligation to provide the records of this cardiac evaluation as support for his allegation of coronary artery disease.

Moreover, the evidence supports the ALJ's decision that plaintiff's coronary artery disease was not a severe impairment.  Even though plaintiff alleged the symptoms of shortness of breath and chest pain,[5] he denied these symptoms at each emergency treatment or hospitalization and his cardiac examination was normal. (Tr. 166, 173, 194, 201, 236, 241).  Also, no physician reported any functional limitation or symptom resulting from the alleged condition.  In the same hospital records upon which plaintiff relies to support his argument (June 24, 2003), the doctor found plaintiff's heart had a regular rate and rhythm (Tr. 151).  The records also show that plaintiff was not taking any medication including aspirin (Tr. 152), his chest x-ray was interpreted as showing plaintiff's heart and mediastinum were "unremarkable" (Tr. 163), and the intake form indicates plaintiff denied trouble breathing or chest pain. (Tr. 166).  At the previous hospitalization, on June 14, 2003, plaintiff denied chest pain and his heart was noted as having a "regular rate and rhythm, without murmurs, ectopy, gallops, or rubs". (Tr. 201).  At the next hospitalization on July 7, 2003, his examination was normal but for "moderate right

─────────────────

[5]  In response to the question "What are the illnesses, injuries or conditions that limit your ability to work?" on his disability report, plaintiff answered: "I have nausea & vomiting all day and pain in stomach and chest pain and shortness of breath." (Tr. 96).

sided tenderness." (Tr. 194).  His heart had a "[r]egular rate and rhythm, without murmurs, ectopy,

gallops or rubs" and plaintiff reported "no chest pain" and his lungs were noted as clear with "breath

sounds equal, no wheezes, rales, or rhonchi." (Tr. 194). Additionally, plaintiff's current medication list

shows he is taking medication for pain, ammonia levels and nausea, but not for coronary artery disease.

(Tr. 142).

Plaintiff argues that the ALJ also failed to fully develop the record by not making a specific

finding in regard to the combined effect of his impairments on his residual functional capacity.  Plaintiff

points out that the ALJ found he had the severe impairment of Hepatitis C but because he did not

properly develop the record regarding plaintiff's limited intellect and coronary artery disease he failed to

consider the combined effect of all the functional limitations resulting from plaintiff's impairments.

On this issue, the ALJ found as follows:

In determining the claimant's residual functional capacity, the [ALJ] has carefully
reviewed the medical evidence as well as the testimony of the claimant.  The primary
issue facing the undersigned in evaluating the claimant's residual functional capacity is
the vast disparity between the claimant's subjective complaints and the medical
evidence. Consequently, the [ALJ] has performed a meticulous review of the record.
After completing this review of the claimant's testimony and the pertinent medical
reports, the undersigned finds that the preponderance of the most credible evidence has
not established the evidence of either single or combined medical conditions which
could reasonably be expected to produce symptoms in the severity, frequency and
duration necessary to significantly compromise the claimant's performance of all forms
of gainful activity.  In other words, the claimant still possesses the residual functional
capacity to perform sedentary work.

(Tr. 16).

42 USC § 423(d)(2)(B) (Supp. 1999) requires as follows:

 (B) In determining whether an individual's physical or mental impairment or
impairments are of a sufficient medical severity that such impairment or impairments

21

could be the basis of eligibility under this section, the Commissioner of Social Security
shall consider the combined effect of all of the individual's impairments without regard to
whether any such impairment, if considered separately, would be of such severity.  If
the Commissioner of Social Security does find a medically severe combination of
impairments, the combined impact of the impairments shall be considered throughout
the disability determination process.

Id.  Therefore, the ALJ must consider the combined effect of plaintiff's impairments as they relate to

plaintiff's ability to perform past relevant work or other work. Lucas v. Sullivan, 918 F.2d 1567, 1574

(11th Cir. 1990); Hudson v. Heckler, 755 F. 2d 781, 785 (11th Cir. 1985).  However, the ALJ may

meet this obligation by stating that "the medical evidence establishes that [plaintiff] had [several injuries]

which constitute a 'severe impairment', but that he did not have an impairment or combination of

impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."

Wilson v. Barnhart, 284 F.3d 1219, 1224-1225 (11th Cir. 2002).  In Wilson, the court found that this

statement constituted "evidence that [the ALJ]  considered the combined effects of [the plaintiff's]

impairments." Id. at 1225 citing Jones v. Dept. of Health and Human Servs., 941 F.2d 1529, 1533

(11th  Cir.1991) (holding that the following statement was evidence of consideration of the combined

effect: [[T]he claimant] has severe residuals of an injury to the left heel and multiple surgeries on that

area, [the claimant does not have] an impairment or combination of impairments listed in, or medically

equal to one listed in Appendix 1, Subpart P, Regulation No. 4." (emphasis removed)); see also

Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (finding that the ALJ meets this

requirement by expressly finding "the claimant not to suffer any impairment or combination of

impairments" sufficiently severe to prevent participation in substantial gainful activity.)  However, the

Eleventh Circuit Court of Appeals has also found that the ALJ has a duty "to make specific and well-

articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984); see also Reeves v. Heckler, 734 F.2d 519 (11th Cir. 1984).

Upon review of the foregoing paragraph from the ALJ's decision and the applicable law,  the undersigned finds that the ALJ did consider plaintiff's impairments in combination and made a specific finding on that issue after consideration and analysis of the medical records and claimant's testimony. Moreover, the medical evidence regarding the signs, symptoms and  functional limitations resulting from plaintiff's alleged conditions, or absence thereof, supports the ALJ's decision that  no "single or combined medical conditions . . . significantly compromise [plaintiff's] performance of all forms of gainful activity." (Tr. 16).

**3. Whether the ALJ erred by failing to properly consider plaintiff's testimony of nausea, abdominal pain, and fatigue.**

Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints associated with Hepatitis C and thus, improperly found his testimony was not credible.  Specifically, plaintiff states that the ALJ never made a threshold finding as to whether he has a medically determinable impairment (Hepatitis C) which could reasonably produce his symptoms.  Plaintiff asserts that he testified that he could not work because of chronic nausea with only some relief from medication, pain and fatigue and the need to spend most days in bed which is consistent with his diagnosis of Hepatitis C. (Tr. 47).  In support of his testimony, plaintiff relies upon the documentation of  his complaints of upper abdominal pain resulting in gall bladder surgery with continued post-surgical complaints of pain, nausea, vomiting,

and fatigue in the  hospital records of his eight hospital visits from June 2003 through March 2004.

Plaintiff further argues that the ALJ erroneously based his credibility determination on his finding that "[i]t is reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, he would have presented to his physicians for ongoing treatment" (Tr. 20)  and his finding that it was "extremely significant that the claimant has not been prescribed any medication for his condition" (Tr. 20).  Plaintiff points out that the ALJ reviewed plaintiff's medication list with him at the hearing and discussed whether plaintiff was able to obtain his medications.  Plaintiff also points out his testimony that his physician had recommended a pain management program but he could not afford it. (Tr. 43).[6]  Therefore, plaintiff asserts that the ALJ was aware that he had sought treatment and obtained medication for his condition.

In order to establish disability based on subjective testimony of pain or other subjective complaints such as nausea and fatigue, plaintiff "must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition;  and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225-1226 (11th Cir. 2002); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).  Subjective testimony regarding pain or other symptoms if supported by objective medical evidence which satisfies the pain standard is sufficient to support a finding of

_____

[6] Plaintiff's current medication list indicates that he began taking Lactulose for ammonia levels and Phenergan for nausea in March 2004; Vioxx for pain and arthritis and Lortab 10 for pain in May 2004; and Toradol for pain in March 2004. (Tr. 142).

disability.  See Brown v. Sullivan, 921 F.2d 1222, 1236 (11th Cir. 1991).  "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F. 2d 837, 839 (11th Cir. 1992).  Therefore, if the ALJ discredits plaintiff's subjective pain testimony, he must clearly articulate adequate and specific reasons, Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995), or, if he implicitly discredits plaintiff's subjective pain testimony, it must be clear from review of the record and the ALJ's decision.[7]  Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983).  "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court."  Id.  Also, the reasons set forth must be based on substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir.1991).  Additionally, "[f]ailure to articulate the reasons for discrediting subjective pain testimony, requires as a matter of law, that the testimony be accepted as true."  Brown, 921 F.2d at 1236; see also Hale, 831 F. 2d at 1012.

Moreover, "[t]he credibility of witnesses is for the [Commissioner] to determine, not the courts."  Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) citing Kelly v. Heckler, 736 F.2d 631, 632 (11th Cir.1984).  Thus, the ALJ's "task is to examine the evidence and resolve conflicting reports."  Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) citing Powers v. Heckler, 738 F.2d

_____

[7]  In Foote, the Eleventh Circuit found that

[w]hile an adequate credibility finding need not cite "particular phrases or formulations ... broad findings that [a claimant] lacked credibility and could return to her past work alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole."  Jamison v. Bowen, 814 F.2d 585, 588-90 (11th Cir. 1987).

Id. at 1561.

1151, 1152 (11th Cir.1984) (per curiam); Grant v. Richardson, 445 F.2d 656 (5th Cir.1971) (per curiam) ("Moreover, the resolution of any conflict in the evidence . . . and the determination of questions of credibility of the witnesses are not for the court; such functions are solely within the province of the Secretary."); 20 C.F.R. § 404.1546, 20 C.F.R. § 416.946.

The ALJ found that the plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (Tr. 22).  In the body of the decision and as previously stated in the section addressing whether the ALJ considered plaintiff's impairments in combination, the ALJ found as follows:

> In determining the claimant's residual functional capacity, the [ALJ] has carefully reviewed the medical evidence as well as the testimony of the claimant.  The primary issue facing the undersigned in evaluating the claimant's residual functional capacity is the vast disparity between the claimant's subjective complaints and the medical evidence. Consequently, the [ALJ] has performed a meticulous review of the record. After completing this review of the claimant's testimony and the pertinent medical reports, the undersigned finds that the preponderance of the most credible evidence has not established the evidence of either single or combined medical conditions which could reasonably be expected to produce symptoms in the severity, frequency and duration necessary to significantly compromise the claimant's performance of all forms of gainful activity.  In other words, the claimant still possesses the residual functional capacity to perform sedentary work.

(Tr. 16).   The ALJ also found that

> [t]he claimant in documentation of record, has alleged heart disease, cirrhosis and Hepatitis C as a basis of disability.  The undersigned concludes that, while the record contains evidence of the existence of a diagnosis of Hepatitis C, the objectively demonstrable evidence of record fails to support that the claimant is as impaired as he has alleged.  As stated above, the [ALJ] finds that the claimant's alleged heart disease and cirrhosis are not severe impairments. With regard to the Hepatitis C, the undersigned recognizes that no credible treating or consultative physician has opined that the claimant was disabled because of any physical and/or mental condition or from any resulting symptom.  Specifically, the [ALJ] notes that the medical records reveal only minimal hepatitis.  The [ALJ] further notes that the claimant has not taken any

medication for his alleged condition.

(Tr. 20).   The ALJ also noted

> that the claimant's clinical examination findings have often been found to be normal or minimally abnormal, and the objective diagnostic evidence of record has been sparse. As stated above, the CT scan only revealed minimal hepatitis.  It is noteworthy that documentation of record does not contain any hospitalizations for the claimant for physical and/or mental health conditions since his alleged onset of disability.

> The [ALJ] finds it extremely significant that the claimant has not been prescribed any medication for his condition.  The undersigned recognizes the paucity of medical evidence in this case, and he specifically acknowledges the overall lack of persistent and regular treatment and lack of recent medical documentation of  visits to physicians. It is reasonable to assume that if the claimant were  experiencing physical and/or mental difficulties to a disabling degree, he would have presented to his physicians for ongoing treatment.  The [ALJ] further notes that in the emergency room records dated March 17, 2004 and May 8, 2004, there is evidence of drug use.

(Tr. 20).

Despite plaintiff's argument that the ALJ failed to make a threshold finding as to whether he has a medically determinable impairment which could reasonably produce his symptoms, review of the ALJ's decision indicates that he did.  The ALJ specifically found that "while the record contains evidence of the existence of a diagnosis of Hepatitis C, the objectively demonstrable evidence of record fails to support that the claimant is as impaired as he has alleged." (Tr. 20).  Thus, the ALJ met the first part of the standard for evaluating subjective complaints by finding that plaintiff had a medically determinable impairment of Hepatitis C.  However, the ALJ then found that the medical evidence did not support plaintiff's subjective allegations, thus plaintiff failed to meet the second and third part of the standard, i.e., "objective medical evidence confirming the severity of the alleged pain [or subjective symptom]; or [] that the objectively determined medical condition can reasonably be expected to give

27

rise to the claimed pain [or subjective symptom]." Wilson, 284 F.3d at 1225-1226.  On this issue, the

ALJ specifically noted that "[a]fter completing this review of the claimant's testimony and the pertinent

medical reports, the undersigned finds that the preponderance of the most credible evidence has not

established the evidence of either single or combined medical conditions which could reasonably be

expected to produce symptoms in the severity, frequency and duration necessary to significantly

compromise the claimant's performance of all forms of gainful activity." (Tr. 16).

 The undersigned finds that the ALJ set forth adequate reasons for his credibility determination;

specifically, the absence of an opinion from a treating or consultative physician that plaintiff was

disabled "because of any physical and/or mental condition or from any resulting symptom" and  the

medical records which show that plaintiff has "only minimal hepatitis". (Tr. 20).   The record shows that

the hospital physicians have not indicated any restrictions or functional limitations related to plaintiff's

Hepatitis C.   Following plaintiff's gall bladder surgery at which time he was diagnosed with Hepatitis

C, he was discharged without restriction. (Tr. 146).  He was hospitalized again with abdominal pain

and was discharged without restriction. (Tr. 170).  After his emergency room visits for abdominal pain,

he was released without restriction but for once when he was told to take clear liquids for twenty four

hours. (Tr. 191, 195, 210, 212, 239-240).  Also, at the initial diagnosis, the doctor noted plaintiff's

liver appeared normal but obtained a biopsy because of  "mildly elevated liver function test" results. (Tr.

152).   The biopsy indicated "minimal chronic lobular hepatitis consistent with viral (i.e., Hepatitis C)

etiology. Portal/periportal inflammation grade 1, fibrosis stage 1". (Tr. 153- 154).

 The ALJ also noted the "paucity of medical evidence" and the "overall lack of persistent and

regular treatment and lack of recent medical documentation of visits to physicians" and  found that it

was "reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, he would have presented to his physicians for ongoing treatment." (Tr. 20). Plaintiff argues that this statement is erroneous and that he testified that he has been referred for pain management by his treating physician, thus he does receive ongoing treatment. (Tr. 47). However, there are no records from a treating physician to support this allegation. Therefore, the ALJ did not commit reversible error by relying upon the absence of treatment records for the conditions alleged. Moreover, it appears that but for the consult with Dr. Crum, plaintiff's entire medical record consists of emergency room visits which on two occasions have resulted in hospital admissions.

The ALJ also found that plaintiff "has not taken any medication for his alleged condition." (Tr. 20). The record shows that plaintiff is taking pain medication including one for arthritis which he did not allege as a disabling impairment. However, his medication list does not specify that he has been prescribed medication for Hepatitis C. (Tr. 142). He reported that Lactulose was prescribed for "ammonia levels" and it appears from this court's additional research that it is used to treat complications from cirrhosis or Hepatitis which result in a failure of the liver to process ammonia. www.webmd.com Thus, the ALJ was incorrect in his reliance upon the absence of medication for Hepatitis C. However, as the ALJ found, there is no evidence to document the severity of plaintiff's Hepatitis C. Instead, as previously discussed, his diagnostic and clinical tests have indicated mildly elevated liver function and minimal Hepatitis. Also, his surgeon apparently found him healthy enough to perform a laparascopic removal of the gall bladder and dismissed plaintiff without any restrictions. Accordingly, the undersigned finds that the ALJ did not commit reversible error for failing to recognize that Lactulose may have been prescribed for treatment of plaintiff's Hepatitis C and for finding that

29

plaintiff was not taking medication for his alleged impairments.

Upon consideration of the ALJ's decision and the medical evidence and testimony upon which he relied, the undersigned finds that the ALJ did not commit reversible error by finding that plaintiff's allegations of his subjective complaints were not fully credible and that substantial evidence in the record supports his determination.

**VII.   Conclusion**

For the reasons set forth, and upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security denying plaintiff's claim for Social Security disability insurance benefits and supplemental security income be **AFFIRMED.**

The attached sheet contains important information regarding objections to this  report and recommendation.

**DONE** this 21st day of September, 2005.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**

30

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

 s / Kristi K. DuBose
**UNITED STATES MAGISTRATE JUDGE**